IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RAINBOW BUILDING CO., INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CAMPBELL ROOFING & CONSTRUCTION, ) <br> INC. and GREAT AMERICAN INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendants. ) | CASE NO.: <br><br> CV-04-RRA-3053-E |

## MEMORANDUM OF OPINION

**I.  INTRODUCTION**

This is a civil action filed by the Plaintiff, Rainbow Building Co., Inc. ("Rainbow")[1], against Campbell Construction & Roofing, Inc. ("Campbell"), and Great American Insurance Company ("Great American"). The case was filed on October 20, 2004, and alleges counts of breach of contract, collection for goods and services provided, and violations of the Alabama Prompt Pay Statute. In addition, it is a suit on a payment bond pursuant to the Miller Act, 40 U.S.C. § 270a, et seq. On November 15, 2004, the defendants filed a Counterclaim for a set-off against any amount the plaintiff recovers. The case is presently before the Court on the plaintiff's Motion for Summary Judgment as to that Counterclaim. (Doc. 11).

---

[1] The Complaint actually reads: "This is a suit on a payment bond pursuant to the Miller Act, 40 U.S.C. § 270a, et seq., brought by the United States of American [sic], for the use and benefit of Rainbow Building Co., Inc." However, for purposes of this motion, the parties treat the plaintiff as one entity–Rainbow Building Co., Inc. The Court will do the same.

## II.     STANDARD OF REVIEW

> In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

## III.    FACTS[2]

Campbell, as general contractor, was hired to do work at the Anniston Army Depot. Rainbow entered into a subcontract (the "Building 400 Subcontract") with Campbell relating to work on Building 400 at the Anniston Army Depot. The contract was dated October 15, 2002.

The plaintiff had attended a pre-construction meeting prior to the signing of this subcontract. At this meeting the "Scope of the Work" was explained to Campbell and to Mr. Bruce Russell, the plaintiff's representative.[3] The authorized representative of Campbell's contracting office, Gary Stokes, explained that the "Scope of the Work" included the painting of the exterior doors, frames and trim. Plaintiff's subcontract with Campbell provided that

---

[2] The facts stated herein are presented, as the court must, in the light most favorable to the non-movant. Some stated facts may be disputed. Where it deems appropriate, the Court may note disputed facts.

[3] The plaintiff contends that Mr. Russell was the President of the plaintiff. The defendant denies this but admits that Mr. Russell was the plaintiff's Vice-President. The plaintiff provides no evidentiary support for this contention.

the plaintiff would be paid Four Hundred Fifteen Thousand Three Hundred Twenty-one Dollars ($415,321.00).  The defendants imply that this contract was signed at the pre-construction meeting, but there is no evidence supporting that implication.

Pursuant to the Building 400 Subcontract, Rainbow agreed, *inter alia*, to "[p]rovide all labor, materials, equipment, services and other items to remove and dispose of existing asbestos sheet siding," "power wash and paint the exterior block surface below the siding" and "[c]lean interior windows."  The description of the "Work of the Subcontract," found at Article 8.1 of the Building 400 Subcontract, does not reference or incorporate a requirement regarding painting of overhead doors or man doors on Building 400.  Article 1.1 of the Building 400 subcontract states it "supercedes prior negotiations, representations or agreements, either written or oral" and Article 1.4 states that '[t]he Subcontract may be amended or modified only by a Modification."  According to AIA Document A201, which is incorporated by reference in Article 1.2 of the building 400 Subcontract, a "Modification" requires a written amendment to the subcontract or written change order.  No such document exists relative to the painting of overhead doors or man doors on Building 400.  In addition, the plaintiff, under "Article 8.  THE WORK OF THIS SUBCONTRACT," paragraph 4 was to "[i]nclude all other references and appurtenances as taken from the Scope of Work and as directly taken from the contract documents for Task Order 4, contract No., DACA01-02-D-0022."

Rainbow entered into its own subcontracting agreement with Southeastern Industrial Painting, Inc.  ("SIP").  The scope of the work to be performed by SIP for Rainbow related to Building 400 was contained within a SIP proposal dated September 10, 2002.   The work

SIP agreed to do did not include painting overhead doors or man doors.  SIP completed its work on the project, and, on December 19, 2003, SIP executed a "Subcontractor's Affidavit of Payment of Debts and Claims and Affidavit of Release of Liens" (the "SIP Affidavit").  In the SIP Affidavit, SIP states that it has completed its work related to the "Bldg 400 Window Cleaning and Abatement and B114 Floor Repair" and acknowledges receipt of all sums due from Rainbow for such work.  In this document, SIP also releases and discharges Rainbow from any and all claims related to the Building 400 work, and waives and releases "any and all" claims against Rainbow.

Subsequent to SIP's execution of this release and completion of work on Building 400, SIP, by letter to Rainbow dated January 16, 2004, proposed to prime and paint overhead and man doors on Building 400.  Rainbow replied by letter dated January 21, 2004, stating that the work proposed by SIP was not included in the Building 400 Subcontract and declining to contract with SIP to perform the work described in SIP's proposal.

By letter dated February 20, 2004, SIP ultimately invoiced Campbell directly for the overhead door and man door work described in the defendants' counterclaim.  SIP advised Campbell in that February 20, 2004 letter of Rainbow's position that the overhead and man door work was not included within Rainbow's scope of work.  It is unclear from the parties' submissions whether the work had already been completed by SIP, or even started, at this time.

The Department of the Army, Mobile District Corps of Engineers, sent Campbell a letter, dated June 10, 2004, which stated the following:

> As verbally discussed with your office, subject contract scoping was discussed with

4

>your onsite personnel prior to bid preparation by your organization.  During this discussion it was specifically addressed that the work required was to paint all exterior door surfaces of Building 400.  This was to include block, trim, doors, doorframes, etc.
>
>This scoping clarification was in addition to the stated scope of work and became a requirement for pricing.

*Department of the Army Letter of June 10, 2004*, at 1.  At some point Campbell's representative questioned SIP as to why the painting was not yet done.  Mr. Nick Sfakinos, the Vice President of SIP, then asked the plaintiff's Russell "if he was going to add the painting requirement to [the SIP] contract.  Mr. Russell stated that he realized that the painting requirement was part of his contract, however, he would discuss adding to [the SIP] contract at a later date."[4]  *Sfakianos Affidavit*, at 2.

Campbell's Project Manager, Bill Alvis, gave Russell a quote from another prospective subcontractor, Paint America, Inc., which detailed part of the work to be performed under the plaintiff's subcontract and included the requirement to paint the exterior doors, trim and frames.  The proposal itself is dated June 12, 2002.  There is no evidence as to when this bid was transmitted to Mr. Russell, although there are two fax lines on the document reflecting the date June 8, 2004.  Mr. Russell reviewed the quote, but he declined to contract with Paint America, Inc., preferring to deal with a painting contractor with whom he was familiar.

It is undisputed that at some later point the government again contacted Campbell concerning the painting of the exterior doors and directed that it be completed.  However, there is no evidence as to when this second contact took place.  Mr. Russell was then

---

[4]The plaintiff disputes this assertion stating that: "Rainbow has consistently maintained that the overhead doors and man doors work was not in its scope of work." *Plaintiff's Reply*, at 3.

5

deceased, and his widow was managing the company. She denied that the painting in question was part of the plaintiff's contract and refused to perform the work. Campbell then contracted directly with SIP, on August 19, 2004, to perform the work and issued what the defendants refer to as a "change order" deleting the painting of the exterior doors, trim, and frames from the plaintiff's contract. It is undisputed, however, that Campbell had already paid the full amount owed on the contract to Rainbow, which amount Campbell contends included sums for painting the exterior doors. It is undisputed that Campbell paid SIP for the exterior door work.[5]

## IV.   ANALYSIS

### A.   The SIP Release

On December 19, 2003, SIP executed a "Subcontractor's Affidavit of Payment of Debts and Claims and Affidavit of Release of Liens" (the "SIP Affidavit"). In the SIP Affidavit, SIP states that it has completed its work related to the "Bldg 400 Window Cleaning and Abatement and B114 Floor Repair" and acknowledges receipt of all sums due from Rainbow for such work. In this document, SIP also releases and discharges Rainbow from any and all claims related to the Building 400 work, and waives and releases "any and all" claims against Rainbow. The plaintiff contends that this release bars the counterclaim by the defendants against it. The defendants did not respond to this point in their brief.

There is no dispute among the parties that Alabama law applies to this question. It is settled under Alabama law that a release, executed by a subcontractor, which is clear and

---

[5]There is no evidence as to when SIP actually performed the work.

unambiguous, and which was not induced by fraud, operates as a bar by that subcontractor to claims against the general contractor or owner of the property. *See Wayne J. Griffin Elec., Inc. v. Dunn Const. Co.*, 622 So.2d 314, 317 (Ala. 1993). There is no allegation that the release is unclear or ambiguous, or that it was induced by fraud. Accordingly, the release would have barred any claim by SIP against Campbell or Rainbow as of that date. However, the release would not act as a bar to a claim made by Campbell for a set-off. Under its original contract, SIP could not make a claim against the plaintiff because of the release, and there is no evidence of a further contractual obligation between Rainbow and SIP. Campbell does not, however, request a set-off because it paid money Rainbow owed to SIP.[6] Instead, it claims a set-off because it was forced to hire another contractor (SIP) to perform work that Rainbow agreed to do. The release, therefore, does not operate to bar the defendants' claim to recover from the plaintiff those amounts it had to pay SIP for paint work the plaintiff should have done. The question, remains, however, of whether the plaintiff was obligated to do the painting in question, or whether it really matters.

      B.      **Whether the Contract Includes the Exterior Door Painting**

It is undisputed that the specific terms of the agreement between Campbell and Rainbow did not include the exterior door painting. However, under "Article 8. THE WORK OF THIS SUBCONTRACT," paragraph 4 was to "[i]nclude all other references and appurtenances as taken from the Scope of Work and as directly taken from the contract documents for Task Order 4, contract No., DACA01-02-D-0022." The defendants contend

---

[6]There is no evidence that Campbell even knew of the existence of the Rainbow-SIP release.

that this language incorporated by reference the agreement between the Government and Campbell. The plaintiff attended the pre-construction meeting where the "Scope of the Work" was explained as including the painting of the exterior doors, frames, and trim. It is not known whether the "Scope of Work" was a written document.

If the quoted language of Article 8 incorporates this conversation, then the contract required the plaintiff to paint the exterior doors. If the language does not incorporate the conversation, then Rainbow was not required to paint the exterior doors. It is not, however, necessary to decide this contract question, if it can be decided on the record, for the defendants' claim does not necessarily depend upon the plaintiff's painting obligations under the contract, if Campbell *mistakenly paid* the plaintiff for paint work the plaintiff had not contracted to do. In such event, Campbell should be allowed to recover whatever amount of money it actually paid the plaintiff to do that painting, although the amount would likely not be the exact same amount of money Campbell paid SIP for actually doing the painting. Accordingly, the plaintiff's motion for summary judgment is due to be denied. An appropriate order will be entered.

**DONE** this 7th day of October, 2005.

_Robert R Armstrong_
ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE